MONCURE, J.
This is an appeal from a sentence of the Circuit court of Richmond county, affirming a sentence of the County court of that county, admitting a paper writing to probat as the will of John Cun-diff. The only objection made to the will is that it was not executed and attested in the manner prescribed by the Code, ch. 122, 'i 4, p. 516. This case is very much like that of Parramore v. Tajdor, recently decided by this court; except that in this case no question is raised, and it appears none could have been raised, as to the perfect sanity of the testator, and his freedom from any undue influence at the time of the execution of his will. In other respects, the two cases are almost identical. After giving to the able arguments in this case (and that of Green & wife, &c. v. Crain, &c., which involved to some extent the same question, and came on for hearing immediately after this), all the consideration of which I am capable, I am confirmed in my conviction of the correctness of the views expressed in my opinion in Parramore v. Taylor. And regarding that case as a binding author^', I will notice only those particulars in which it was argued by the *567 counsel of the appellant that this case is distinguishable from that.
The principle decided in that case is, that under our present law, a will acknowledged by the testator in the presence of two witnesses, present at the same time, who subscribe their names thereto in his presence, the whole being one continuous transaction, occurring at the same time, is well executed, though the witnesses do not subscribe their names in the presence of each other, and though one of them subscribe his in the order of time before the acknowledgment.
One feature of distinction between the two cases, *according to the argument of the appellants’ counsel, consists in this, that there was not in this case, as there was in that, any concert among the witnesses, any privity between the testator and them, any continuity of transaction, commenced, continued and ended, between the same parties, the testator and the witnesses. That in that case the two witnesses on whose attestation the will was sustained, were convened, for the purpose of being witnesses, before the execution of the will was commenced; while here the scrivener subscribed the will as a witness, and then the other two witnesses were successively called in, and subscribed it as such, not before having had any agencjr in the transaction, nor knowing that they were to be called in for that purpose. From my recollection of the facts in Parramore v. Taylor, there is no material difference in this respect between that case and this. If in that case either of the witnesses to the will or the codicil, except Corbin, had any previous knowledge that he would be called on to witness the transaction, the fact was certainly not relied on as one of the grounds of the opinion delivered, or judgment rendered therein, Nor do I conceive the fact to be of any importance whatever. It is very common and natural for a testator to sign his will in the presence of the scrivener, and after the latter has subscribed his name as a witness, to have other persons, who may be convenient, or be selected by him for the purpose, called in for the first time to witness it. It is not often material to him who are the witnesses, so that they be honest and correct men. But it is generally objectionable to him to have his will written or read in the presence of any person but himself and the scrivener, where one is employed; and therefore the business of writing and reading the will, and of its attestation by the scrivener, when one is employed, is generally completed before any other person is called in to witness it. He does *not often convene the witnesses before hand, and keep them in attendance upon or about him during the whole transaction; especially when, as in this case, he executes his will at a place where he can obtain proper witnesses at any Instant he may want them. Richard H. Ivyell, the scrivener in this case, was relied on bjr the testator to have his will duly executed and attested. He was a most important agent in the whole transaction. In no part of it can it be said that he was a silent or unconcerned spectator. His office was not ended when he subscribed the will. He immediately, and without leaving the room, called in the other witnesses successively, and bore witness with them to the acknowledgment made to them respectively bj' the testator.
But the main feature of distinction contended for by the appellants’ counsel between this case and that of Parramore v. Taylor, is, that there the testator acknowledged his will to the witnesses, all of whom knew, from what was said and done at the time, that it was his will. Whereas here, the testator acknowledged his signature merely, to two of the witnesses; and not only did not inform them that the paper was his will, but designedly concealed that fact from them. This difference between the two cases in point of fact, exists in regard to the will in that case; but not, according to my recollection, in regard to the codicil. I do not think, though the record in that case is not before me, that the second witness to the codicil was informed, or had any knowledge, of the name or nature of the instrument when he attested it. I would infer from the opinion delivered in that case that he had not; and at all events, that it was considered of no importance whether he had or not. Nor does it appear that there was any design on the part of the testator in this case to conceal from any of the witnesses to his will, the nature of the instrument. One of them, the scrivener, *of course knew all about it, and he had informed another of the witnesses, his nephew and partner, that he had been requested to draw the will. It does not appear that any secrecy was enjoined upon him by the testator. Both of the other witnesses believed when they attested the instrument that it was a will; and one of them, it seems, indicated that belief, by a jocular remark made by him at the time. Whether however they were ingorant of the fact or not; or whether it was designedly concealed from them by the testator or not, is, as I shall presently endeavor to show, an immaterial circumstance.
The facts in regard to the attestation of the will by the second witness, Henry Byell, as stated by himself, are, that he was called from the store room into the counting room by Richard H. Nyell to witness the will. When he went in, the testator was sitting at the desk, with the will, which he had signed, and R. H. By ell had witnessed, lying on the desk before him or by him. The testator asked him “to witness that instrument of writing.” Witness asked him if he acknowledged that to be his signature, meaning the signature to the paper referred to. The testator said, he did. Henry Ryell then subscribed the paper as a witness in the presence of the testator and of R. H. I/yell. The testator did not tell him it was his will, but he believed it was; and had reason so to believe, from what R. H. Byell had told him. Certainly this would have been a good acknowledgment *568 of the will by the testator to Henry Bj’ell under the statute of -29 Ch. 2, and our corresponding’ statute which was in force before the Code took effect. The cases of White v. The British Museum, 19 Eng. C. L. R. 91, and Wright v. Wright, 20 Id. 197, are conclusive as to the former statute; and the case of Rosser v. Franklin, 6 Gratt. 1, as to the latter. The terms and evidence of the acknowledgment were much stronger in this case than in ^either of those. In the two English cases none of the witnesses saw the testator’s signature, and only one of them knew what the paper was. In the Virginia case, the will was signed by another for the testator, who made her mark, and the only surviving witness was a marksman. It was held not to be necessary that the testator should acknowledge to the witnesses the subscription of his name to be his signature; or even that the instrument is his will. It is enough that he should acknowledge, in their presence, that the act is his, with a knowledge of the contents of the instrument, and with the design that it should be a testamentary disposition of his property. Indeed, the counsel for the appellants admitted that the acknowledgment would have been sufficient in this case under the old law; but they arg.ued that it is not under the new; which requires, as they contended, that the acknowledgment should convey and be intended by the testator to convey, to the minds of the witnesses, a knowledge of the fact that the paper acknowledged is his will; or, .at all events, that the witnesses, at the time of their attestation, must have such knowledge; and the testator must be aware that they have. They contended that the report of the revisors, which conformed to the stat. of 1 Vict. ch. 26, ? 9, in authorizing the testator’s signature to be acknowledged, was amended in the legislature, by requiring the will instead of the signature to be acknowledged by him, for the very purpose of correcting the loose constructions which they supposed had been introduced by those cases and others. I do not think so, but quite the contrary. I think that amendment was made .for the purpose of adhering to the old law, and the judicial construction it had received in that respect. The statute of Victoria in requiring the signature to be acknowledged instead of the will, effected, it seems, a material change of the 29 Ch. 2, as it had been expounded *by the courts. And in construing the former, the English ecclesiastical courts have held acknowledgments not to be good which would have been good under the latter. 7 Eng. Ecc. R. 129 and 340. I think our legislature designed to avoid the danger of such a consequence ; and therefore, by the amendment adopted, employed terms broad enough to .embrace every acknowledgment which would have been sufficient under the old law. There was nothing in that law which expressly authorized an acknowledgment of the will by the testator: It spoke of signing i only. By judicial construction, an ac-1 knowledgment of the signature was held tq be equivalent to making the signature in the presence of the witnesses: then an acknowledgment of the instrument as a will, was held to be so equivalent: and then an acknowledgment of the instrument with a knowledge of its contents and an intention on the part of the testator that it should operate as his will, was held to have the same effect, though the witnesses did not know that the instrument was a will. This construction was well settled; and the legislature seems to have designed to embody'it in the new statute. In saying that the will may be acknowledged, they used terms which were well understood by the profession and the people, and must have intended them to be so understood. They could not have intended to embrace some forms of acknowledgment and exclude others. An acknowledgment of an instrument which is a will, and known and intended by the testator to operate as such, is an acknowledgment of the will, though not so called by the testator in making the acknowledgment, and though the witnesses be ignorant of the fact that it is a will. If the legislature had designed to make the change as contended for, thej' would have used plain language for that purpose, such as was used by the legislature of New York in making a similar change. Their language *was that the testator, at the time of subscribing or acknowledging the will in the presence of. the witnesses, shall declare the instrument to be his last will and testament. 2 Rev. Stat. 63, § 40. In construing this language, it has been held by the courts of that state, that there must be an actual publication of the instrument as a will, in the presence of the subscribing witnesses, in addition to the other formalities required by the statute, Brinkerhoof v. Remsen, 8 Paige’s R. 488; S. C. 26 Wend. R. 325. The difference between the language of our statute and that of New York is very material; and yet it is contended that ours should be construed as that has been. I think that such a construction would extend the words “or the will acknowledged’’ greatly beyond their proper meaning, the meaning in which they are generally well understood, and would be inconsistent with the other terms and provisions of our statute. The legislature could not have designed, in such an obscure way, to make so radical a change of the law; and not only to make publication necessary as a statutory requisition to the validity of a will, but require it to be made in the presence of the subscribing witnesses.
It seems to be somewhat doubtful whether publication ever was necessary to the validity of a will. 1 Jarm. on Wills 71. If ever necessary, it might have been inferred from slight circumstances. 3 Lomax Dig. 42, | 24. The statute of 29 Ch. 2 did not require it; but on the contrary, seems to have dispensed with, its necessity, if it previously existed; or at least substituted the requisitions thereby prescribed in place of *569 any other publication, in cases to which the statute was applicable. “ All other requisitions (says Judge Bomax) would seem necessarily to be excluded, but those which are embraced in the statute; and publication, as a distinct act of the testator, is not one of those which are enumerated.” Id. 43. “Signing 'x'and acknowledgment of a will before witnesses (says Judge Tucker) amount to what is called a publication of the will, although they are not informed that it is a will, and though the testator even calls it a deed.” 1 Tuck. Com. pt. 2, 294. “The case of Trimmer v. Jackson (says Dr. Burn) was where the witnesses were deceived by the testator at the time of the execution, and were led to believe, from the words used by the testator at the execution of the instrument, that it was a deed and not a will. It was delivered as his act arid deed; and the words sealed delivered were put above the place where the witnesses were to subscribe their names. And it was adjudged by the court, as it is said, for the inconveniences that might arise in families from having it known that a person had made his will, that this was a sufficient execution. 4 Burns’ Eccl. Law, 8 Bond. ed. by Tyrwhitt, 130.” This and other cases on the subject are reviewed in the able opinion of the chancellor in Brinkerhoof v. Remsen, 8 Paige’s R. 488, from which I have taken the quotation above made from the work of Dr. Burn.
I have said that the construction contended for would be inconsistent with the other terms and provisions of the new law. It would not require publication where the will is wholly written by the testator; nor, though not wholly written by him, if the signature be made (instead of the will acknowledged) in the presence of the witnesses. Why is not publication as necessary in those cases, and especially the latter, as in a case in which the will is acknowledged? Can it be believed that the legislature intended to permit a testator who can and chooses to write his own will, or sign it in the presence of the witnesses, to conceal from them the fact that it is a will, and even to execute it in the form of a deed for that purpose; and yet to require a testator who cannot write, or who happens not to make his signature in the presence of *the witnesses, to declare to them that the instrument is his will? Surely, if the legislature had intended to require publication at all, the requisition would have been uniform, and applied to all cases in which the reason for its application is the same. That is the case in the statute of New York, which requires publication as well where the signature is made, as where it is acknowledged in the presence of the witnesses. There the publication is a statutory ingredient in the execution of the will, entirely independent of the act of making or acknowledging the signature, and must coexist with that act, whether it be in one form or the other. Here the publication contended for would not be an independent, necessary ingredient in the execution of the will, but be a mere alternative, or substitute, for the act of making the signature in the presence of the witnesses. The most natural alternative for such an act would be the acknowledgment of the signature; and that is what the re-.visors proposed. But the legislature authorized the will to be acknowledged; and thus, I think, made any acknowledgment valid which would have been so, under the construction which had been put upon the old law. Therefore, the acknowledgment of the instrument, 'and a fortiori, of the signature, though the witnesses be not informed of the name or nature of the instrument, is sufficient; if the testator himself knows its contents, and intends that it shall be a testamentary disposition of his property. In this case, both the instrument and the signature were acknowledged by the testator; and that he knew its contents, and intended it to operate as a testamentary disposition of his property, is conclusively proved by the draftsman of the will and one of the subscribing witnesses thereto.
The construction contended for would, 1 think, greatly increase litigation, and produce much mischief without any corresponding good. The perplexing ^question in all cases of acknowledgment of a will would be, whether what was said or done by the testator amounted to an acknowledgment. Too much would depend upon the loose recollection of the witnesses; and the danger of their being tampered with, and of the will being thus defeated, would be greatly increased. The evils of increased litigation and confusion, arising from a change of the will law, are signally displayed in regard to a provision in the statute of Victoria, requiring the will to be signed “at the foot or end thereof by the testator.” An immense number of cases have been before the English courts, involving the construction of these words. Our legislature wisely avoided the evil by adhering to the old law, and merely embodied in the new statute the judicial construction of that law, by requiring the will to be signed “in such manner as to make it manifest that the name is intended as a signature.” There have been cases also before the English courts, involving the construction of the words of the statute of Victoria, requiring the signature to be acknowledged. Our legislature has, I think, in like manner avoided this evil by requiring' the will to be acknowledged.
In conclusion, this is a case in which a man, having no family, wished to give his estate to some of his collateral kindred; and made his will for that purpose. He was of perfectly sound mind, and free from any undue influence at the time of its execution; and dictated and understood the contents of it. The scrivener and the witnesses were men of unimpeached integrity, having no interest of their own to subserve, and no motive, so far as the record shows, for favoring or disappointing ariy of the ex-pectants upon the testator’s bounty. He acknowledged his signature to the will in *570 the presence of at least two witnesses, present at the same time, who subscribed their names thereto in his presence. If this will be not valid, the law has, in *this instance, signally failed in its intended effect, to secure a free and fair exercise of the testamentary right. But I am of opinion that it is valid, and I am therefore for affirming the sentence of the Circuit court.